UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEROME PENROSE | Criminal No. 05-CR-10094 |

**DEFENDANT'S SENTENCING MEMORANDUM**
**AND REQUEST FOR DOWNWARD DEPARTURE**

Defendant Jerome Penrose submits this memorandum in support of his position that this Court should depart from the applicable advisory guideline range pursuant to U.S.S.G. § 4A1.3(b), 18 U.S.C. § 3553 and the Supreme Court's decisions in United States v. Booker, 453 U.S. 220 (2005). Mr. Penrose respectfully submits that his criminal record, the abuse and neglect he was subjected to as a child and young adult, his cooperation with the government, and his immigration status render a sentence of thirty-six months an appropriate one. Moreover, since Mr. Penrose is indigent, the defense requests that the Court waive any fine.

**I.    INTRODUCTION**

    **A)    PROCEDURAL HISTORY**

On March 28, 2005, Jerome Penrose was taken into federal custody. Mr. Penrose has been detained since that time and was indicted on April 6, 2005 under 18 U.S.C. § 922(a) for two counts of felon in possession of a firearm and one count of a felon in possession of a firearm and ammunition.

Mr. Penrose pled guilty to these charges on January 30, 2006. At the time of his sentencing on May 8, 2006, Mr. Penrose will have served approximately fourteen months in prison.

**B)    STATEMENT OF THE OFFENSE**

These offenses occurred on January 10, 2005, January 27, 2005, and February 8, 2005. On those dates, Mr. Penrose accepted calls from an individual who was working as a government informant. This individual inquired of Mr. Penrose whether he could get firearms for him and a friend (an undercover ATF agent). Mr. Penrose stated that he had none but would see what he could do. He returned the call stating that he had found a supplier and could get a gun. Mr. Penrose then met and delivered the firearm to the ATF agent. This same basic chronology occurred on those three dates and three firearms were purchased by the ATF agent. Mr. Penrose acted as a middleman in these offenses. The only customer Mr. Penrose sold firearms to was the undercover agent in this case.

**II.    THE COURT SHOULD DEPART FROM THE ADVISORY GUIDELINES BECAUSE CRIMINAL HISTORY CATEGORY IV SUBSTANTIALLY OVER-REPRESENTS THE SERIOUSNESS OF MR. PENROSE'S CRIMINAL HISTORY**

**A)    THE GUIDELINES ARE ADVISORY AND NOT PRESUMPTIVELY REASONABLE.**

Since Booker, courts have struggled to clarify the role that the sentencing guidelines play in a defendant's sentencing. See Booker, 453 U.S. 220; United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006), United States v. Fernandez, 443 F.3d 19 (2nd Cir. 2006). The First Circuit has interpreted Booker to hold that a sentence must be "reasonable" and a sentence within the guideline range should not be presumed reasonable. See Jimenez-Beltre, 440 F.3d at 518.

Rather, the Jimenez-Beltre Court held that "the guidelines are still *generalizations* that can point to outcomes that may appear unreasonable to sentencing judges in particular cases." See id.. This is such a case. Currently, Probation has calculated Mr. Penrose to be in Category IV. With an offense level of 23,[1] he is facing 70-87 months (5 years, 10 months to 7 years, 3 months). See PSR ¶96. This calculation greatly over-represents Mr. Penrose's criminal history. Therefore, he respectfully asks this court to sentence him below the guideline range in accordance with Jimenez-Baltre and U.S.S.G. §4A1.3(b).

### B) MR. PENROSE'S CRIMINAL HISTORY CATEGORY OVERSTATES HIS HISTORY.

§4A1.3(b) states that "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes" a downward departure is warranted. U.S.S.G. §4A1.3(b). Here, there is a clear over-representation of the defendant's criminal history which needs to be corrected through a downward departure from the advisory guidelines.

#### 1) PRIOR CONVICTIONS

Mr. Penrose's two prior convictions are for domestic assault and battery involving his girlfriend, Tara Muise. Mr. Penrose does not deny the offenses which led to his

---

[1] Mr. Penrose, the U.S. Attorney's Office, and the U.S. Probation Office all agree that Mr. Penrose's offense level is 23. See Plea Agreement, p. 2; PSR, p. 4.

3

convictions for assault and battery involving Ms. Muise.[2/] There are, however, mitigating facts that this Court should consider.

Ms. Muise and Mr. Penrose have been dating since January of 2001. At that time, both were twenty years old. Due to their immaturity and admitted "anger issues," they would often fight over many inconsequential matters, and sometimes these quarrels would escalate into a physical confrontation. See PSR, ¶66. Both Mr. Penrose and Ms. Muise admit to these past problems but are committed to each other and to their son, Jayden. See id. In addition, Mr. Penrose has completed a year-long anger management class and has asked for further counseling. See PSR, ¶63. Ms. Muise is also in counseling once a week, in part for her anger issues. Both feel that this counseling has helped both of them handle their anger better and has lead to a much more mature relationship.

Ms. Muise is extremely supportive of the defendant and states that he is a good person with a good heart who was easily misled by bad influences around him. See PSR ¶65. Ms. Muise also states that Mr. Penrose is a good father. See id. In fact, because Ms. Muise worked full time, Mr. Penrose would often care for their son, Jayden (who is now 4) and her son, Christian (who is now 8). See PSR, Defendant's Objection ¶51 (accepted by Probation). Ms. Muise is committed to this relationship and plans on moving to Jamaica with Mr. Penrose and her two children, Jayden and Christian. See PSR, ¶65.

---

[2/]   According to the PSR, Mr. Penrose's prior convictions for assault and battery in 2001 and assault and battery/threatening in 2002 would yield 5 criminal history category points under U.S.S.G §4A1.1(d). See PSR, ¶ 36.

### 2) "PROBATION"

In addition, two criminal history category points have been added due to Mr. Penrose's nominal status of "probation" in Lynn District Court. Mr. Penrose was on probation *solely* because he was unable to pay a fine and fees imposed by that court. Therefore, it is an overstatement to say that Mr. Penrose was under a "criminal justice sentence" as intended under this provision of the Guidelines. In fact, the First Circuit has intimated that the constitutional concerns raised in Bearden v. Georgia, 461 U.S. 660 (1983), could be implicated in this situation. See United States v. Prezioso, 989 F.2d 52, 54 (1st Cir. 1993)(adding two criminal history category points under §4A1.1 because the defendant's fine was not yet due and therefore the defendant was still subject to a criminal justice sentence). In Bearden, the Supreme Court held that a defendant could not be imprisoned if he lacked the resources to pay a fine imposed by the court. These constitutional concerns are present in this case since Penrose is indisputably indigent and he was on probation solely due to this fact. He should not be punished for this inability to pay a fine.

### III. MR. PENROSE'S SENTENCE SHOULD BE DECREASED FROM THE ADVISORY GUIDELINES UNDER § 3553

#### A) PERSONAL CHARACTERISTICS AND BACKGROUND

Mr. Penrose is a twenty-six year old Jamaican man. To call his life difficult and complex would be a gross understatement. Mr. Penrose was born on February 26, 1980 in Jamaica to Angela Fletcher and Neville Penrose. Soon after Mr. Penrose's birth, his father moved to Florida from Jamaica without his family. Throughout his childhood, Mr. Penrose had no real relationship with his father. Mr. Penrose's mother struggled to try to provide for Mr. Penrose and his seven half-siblings. They lived in a tiny apartment in an

5

extremely dangerous area of Kingston. Many times Ms. Fletcher had to protect her young children from gunfights in the street. Mr. Penrose recalls that more than once gunmen entered their shabby home to hide from the police. The city proved to be too much for Ms. Fletcher and she moved to the country with her eight children when Mr. Penrose was about four years old. They moved to a small shack in a rural section of Jamaica outside of Kingston. There, the family continued their struggle to survive. They had no money and would oftentimes go hungry. Mr. Penrose would try to help his mother by picking fruit from local trees or performing odd jobs for food for his younger half-siblings.

By the time Mr. Penrose was ten years old, he was addicted to marijuana (which is legal in Jamaica) and began to skip school frequently. This continued for a few years and when Mr. Penrose was approximately thirteen years old, his paternal aunt expressed her desire to have Mr. Penrose live with her in Kingston so she could straighten him out. Mr. Penrose's mother, relieved to have one less mouth to feed, sent Mr. Penrose to Kingston with his aunt. His aunt both verbally and physically abused him. He frequently tried to tell his mother about the abuse but she did not believe him. Mr. Penrose was forced to suffer in this abusive environment for three years. Finally when he was sixteen years old, Mr. Penrose ran away from his aunt and went back to his mother. When he arrived, Mr. Penrose's mother took a bus to Kingston to find out the truth about the alleged abuse from Mr. Penrose's aunt. When she arrived however she was notified by a neighbor that Mr. Penrose's aunt had gone to America suddenly; but, the neighbors confirmed that they had heard the beatings Mr. Penrose would often receive. Mr.

Penrose's story was finally confirmed but the damage from those years of physical and mental abuse continued to haunt him.

Eventually, Mr. Penrose stopped going to school altogether. He would smoke marijuana all day. He had <u>no</u> supervision and <u>no</u> adult controls on his activities.

In 1998, when Mr. Penrose was eighteen, he came to America. He hoped to get a job and send money home to his mother and half-siblings. Finding a job proved more difficult than he expected. When he arrived in the United States, Mr. Penrose could not read or write and was addicted to marijuana. It was difficult but he did manage to find work at Boston Market where he worked from 1999 through 2001. In 2001, Mr. Penrose met Ms. Muise and their relationship began. As stated by Ms. Muise, Mr. Penrose was a good father during this time to their son, Jayden, and Ms. Muise's son from a prior relationship, Christian. <u>See</u> PSR, ¶ 65. In addition, Mr. Penrose often cared for the children since Ms. Muise worked full time. <u>See</u> PSR, Defendant's Objections ¶51 (accepted by Probation).

Mr. Penrose readily admits that he has made mistakes in the past. He has accepted responsibility for his actions by pleading guilty and recognizes that he is fully accountable for his actions. Mr. Penrose never wants to be away from his children again; he sees them as his future and wants them to get a good education and be successful. He sees his future as one free from crime and one where he, Ms. Muise, Jayden and Christian live together in Jamaica. He looks forward to learning to read and write once in a federal facility so he can obtain permanent employment and start fresh with his new family.

> **B)**    **MR. PENROSE'S PARTICIPATION IN THE INSTANT OFFENSE WAS UNCHARACTERISTIC.**

Mr. Penrose does not seek to minimize his participation in the offenses to which he pled guilty. However, Mr. Penrose would like to point out to the court that these were his only offenses involving any type of firearm. In addition, the evidence shows that he was a low-level one time conduit in this type of transaction.

> **C)**    **MR. PENROSE COOPERATED WITH THE GOVERNMENT.**

Prior to his guilty plea, on August 18, 2006, Mr. Penrose met with the Government. Mr. Penrose attempted to assist them in solving other crimes, including murder. In addition, Mr. Penrose gave a full and complete statement regarding these offenses including the supplier of the guns. Though the information he provided was indisputably useful and truthful, no arrests or prosecutions could be made in connection with this information and therefore, the Government refused to file a substantial assistance motion under U.S.S.G. §5K1.1(a)(2).

> **D)**    **MR. PENROSE IS A GOOD PARENT TO HIS YOUNG SONS WHO WILL SUFFER THE LONGER HE IS INCARCERATED.**

Jayden and Christian miss their father. Instead of being able to play or hug their father, they instead look forward to Mr. Penrose's call every night and are upset when they are not able to speak to him. Mr. Penrose is a loving parent who considers his children his future and is excited to live with them and Ms. Muise when he is released.

> **E)**    **THERE IS NO RISK MR. PENROSE WILL RECIDIVATE.**

Mr. Penrose realizes the mistakes he has made in the past regarding his relationship with Ms. Muise and he has accepted responsibility for those actions. He has worked on his anger management issues and hopes to continue to work on these problems

when he is in a federal facility.  He and Ms. Muise have established a more mature relationship and are confident in their future together.  See PSR, ¶65.

Mr. Penrose also accepts responsibility for his actions in the instant offenses. These offenses were atypical for Mr. Penrose and therefore it is clear that Mr. Penrose will not engage in criminal behavior in the future.  In addition, Mr. Penrose will not put himself in any position where he could be without his family again.

### III.  CONCLUSION

As seen from the information provided above, Mr. Penrose's sentence should be reduced from the guideline range.  In support of this conclusion, Mr. Penrose respectfully submits that this Court consider the following facts: Criminal History Category IV overstates his criminal history which consists of two domestic assault and batteries involving Ms. Muise who is committed to him and their future together; looking at the §3553 factors, this court should take into consideration Mr. Penrose's abusive childhood, his lack of a father figure in his life, his cooperation with the Government and his total commitment to his family.  Considering all these factors, this Court should reduce Mr. Penrose's sentence to thirty-six months.

> Respectfully submitted,
> JEROME PENROSE
> By his attorneys,
>
> /s/ Jessica C. Lowney
> Tracy A. Miner (BBO #547137)
> Jessica C. Lowney (BBO #655758)
> Mintz, Levin, Cohn, Ferris,
>    Glovsky and Popeo, P.C.
> One Financial Center
> Boston, MA  02111
> (617) 542-6000

Dated: May 3, 2006